UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

TAMMY HILL-MCFADDEN,   CASE NO.   3:06-CV-466-J-32HTS

    Plaintiff,

vs.

BANK OF AMERICA, N.A.,
a foreign corporation,

    Defendant.

_____

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S OBJECTIONS TO MAGISTRATE JUDGE'S ORDER DENYING DEFENDANT'S <u>MOTION TO DISQUALIFY PLAINTIFF'S COUNSEL</u>**

Plaintiff Tammy Hill-McFadden respectfully submits this memorandum in opposition to Defendant's objections to Magistrate Judge Synder's Order denying Defendant's motion to disqualify Plaintiff's counsel. *See* Def. Obj.[1] at 1. Defendant seeks to disqualify Plaintiff's counsel for engaging in an alleged *ex parte* communication of its current employee, Florence Graham.[2] After considering Defendant's motion and 2 hours of oral argument[3], Judge Snyder

---

[1] "Def. Obj." refers to Defendant's Objections to Magistrate Judge's Order on Motion for Disqualification of Plaintiff's Counsel, filed with the Court on April 4, 2008.

[2] On February 5, 2008, Plaintiff's counsel contacted Ms. Graham through her personal contact information provided by Defendant in its Initial Disclosures to Plaintiff. For other witnesses, Defendant instructed Plaintiff to contact the witness through its legal counsel. *See* DE 71, Ex. A-F. For sake of brevity, Plaintiff reincorporates the statement of facts and supporting exhibits contained in her Memorandum in Opposition to Defendant's Motion to Disqualify Plaintiff's Counsel, DE 71, Exs. A-F.

[3] At the March 11, 2008 hearing on Defendant's motion, Defendant requested and was permitted to submit additional evidence (beyond what it had submitted in support of its motion) even though Plaintiff's counsel had been informed by the Court's Clerk on two occasions prior to March 11, that the hearing was for oral argument, not for putting on evidence.

ruled that there was (a) "nothing improper about the communication" between Plaintiff's counsel and Ms. Graham under Florida Rule of Professional Conduct 4-4.2, and (b) assuming the "appearance of impropriety standard is in fact applicable," Defendant failed to show either a "reasonable probability that Plaintiff's counsel violated Bar Rule 4-4.2", or that "the likelihood of public suspicion or obloquy outweighs the social interests that will be served by the attorney's continued participating in the case." DE 74, Order at 8.

In its objections, Defendant complains that Judge Snyder's denial of Defendant's motion is "clearly erroneous and contrary to law", Def. Obj. at 2, in two respects. First, Defendant complains that the communication was improper under Rule 4-4.2 because Ms. Graham is an employee "whose omissions and statements can obligate and be imputed to Defendant," and because the communication has created an "impermissible appearance of impropriety." Def. Obj. at 1-2.

As shown below, Ms. Graham's role with the Defendant is not one in which her statements to Plaintiff's counsel could be used to obligate or be imputed to Defendant, *see NAACP v. State of Florida, Dept. of* Corrections, 122 F. Supp. 2d 1335, 1342-43 (M.D. Fla. 2000), nor did Plaintiff's counsel's communication with Ms. Graham create an appearance of impropriety. Defendant's motive behind its objections to Judge Snyder's Order, as well as its initial motion to disqualify Plaintiff's counsel (and its previous four motions filed in this case) is for improper "tactical purposes" meant to harass Plaintiff. Plaintiff requests the costs and attorney's incurred fees in responding to Defendant's objections.

## ARGUMENT

I. **JUDGE SYNDER CORRECTLY HELD THAT MS. GRAHAM DOES NOT FALL WITHIN THE THREE CATEGORIES OF EMPLOYEES WITH**

## WHOM *EX PARTE* COMMUNICATIONS ARE PRHOBITED

Rule 4-4.2 provides that "a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer." Fla. R. Prof. Conduct 4-4.2(a); M.D. Fla. Local Rule 2.04(d). The Comment to the rule explains how this rule applies where one party is an organization:

> In the case of a represented organization, this rule prohibits communications with a constituent of the organization who [1] supervises, directs, or regularly consults with the organization's lawyer concerning the matter, or [2] has authority to obligate the organization with respect to the matter, or [3] whose act or omission in connection with the matter may be imputed to the organization for purposes of civil or criminal liability.

Comment, 4-4.2(a) (numbers added). In his Order, Judge Snyder held that Ms. Graham does not fall within any of the above three categories of employees. DE 74, Order at 8. In its objections, Defendant complains that Judge Snyder erred in ruling that Ms. Graham did not fall within the second and third categories of employees.[4]

As to the second category of employees (*i.e.,* those who have authority to obligate the organization with respect to the matter), Defendant simply states that Judge Snyder's decision was "clearly erroneous and contrary to law." Def. Obj. at 6. Curiously, Defendant provides no authority in support of its objection other than stating that "as an officer of the Bank [with] authority for significant matters," Ms. Graham was "fully able to obligate the Bank with respect to issues raised by Plaintiff's whistleblower claim." *Id.* Defendant provides no evidence of what "significant matters" Ms. Graham has "authority" over or how Ms. Graham could "obligate the Bank with respect to issues raised by Plaintiff's whistleblower claim." Rather, Defendant cites to three sources of support for this assertion. The first citation is to Ms. Graham's affidavit.

---

[4] Judge Snyder found [DE, Order at 5], and Defendant concedes that Ms. Graham Does not fall within the first category of employees who "supervise, direct, or regularly consult" with Defendant's counsel. Def. Obj. at 5.

3

At no point in the affidavit does Ms. Graham claim that she was given "authority" over significant matters" or that she was in a position to obligate the Defendant in any regard. *See* DE 67, Ex. A. Next, Defendant cites to the deposition transcript of Brenda Senak, another fact witness in this case, which is improperly before this Court.[5] *See* DE 73, Ex. 2. Even if it should be considered by the Court, however, Ms. Senak's testimony about Ms. Graham does not show or establish that Ms. Graham has the ability to "obligate the Defendant with respect to the matter" in this case. Third, Defendant offers its own self serving arguments at the March 11, 2008 hearing. *See* Def. Obj. at 6. Given Defendant's inability to offer any legal or factual authority that contradicts Judge Snyder's ruling, Defendant's objection on this score fails.

Defendant also complains that Judge Snyder incorrectly concluded that Ms. Graham did not constitute an employee whose act or omission in connection with the matter may be imputed to the organization. Defendant's objects that Judge Snyder's conclusion is "erroneous" because he did not "complete the requisite analysis of Ms. Graham's ability to bind the Bank for purposes of liability in this action." Def. Obj. at 6. According to Defendant, the appropriate legal analysis is (a) whether Ms. Graham is a fact witness, *see* Def. Obj. at 7-8, and (b) whether her statements to Plaintiff's counsel during the interview concern a matter within the scope of her employment, *see* Def. Obj. at 9. Defendant's suggested analyses, however, are not grounded by legal authority.

---

[5] At the March 11, 2008 hearing on Defendant's motion to disqualify, Defendant's counsel requested leave to introduce approximately 10 pages of excerpts from the deposition of Brenda Senak, a fact witness in this case. *See* Def. Obj., Ex. 2 at 12 -15. Plaintiff's counsel reluctantly agreed to allow Defendant's counsel to present those additional 10 pages of excerpts, even though the hearing was slated as one for oral argument, not an evidentiary hearing. *See id.* Despite this agreement, Defendant's counsel submitted the entire deposition transcript in a notice to the Court following the hearing. *See* DE 73, Ex. 2 (attaching the entire deposition transcript of Brenda Senak). Now, Defendant's counsel again seeks to introduce the deposition transcript in its entirety in support of its objections. Defendant's counsel's continuous attempts to play fast and loose not only with its agreements with counsel, but also with the Court is growing tedious.

While Ms. Graham may be a fact witness in this case, Defendant points to *no authority* that suggests that mere knowledge of the facts in a case enables an employee to bind his or her employer. *See* Def. Obj. at 8-9. Nor does Defendant point to any authority that suggests that such knowledge would cause that employee's statements to be party admissions by Defendant. *See id.* In fact, the Eleventh Circuit has found that mere knowledge of the facts at issue in a case is not sufficient to establish an employee's statements as party admissions against the employer. *See Wilkinson v. Carnival Cruise Lines, Inc.* 920 F.2d 1560, 1566 (11th Cir. 1991).

Defendant's second proposed legal standard for determining whether an employee's statements may be imputed to the organization – whether the employee's statements concern a matter within the scope of her employment – is somewhat closer to the mark, but is not a correct statement of the law.

The correct legal analysis for determining whether an employee's statements may be imputed to his or her employer was set forth in the case chiefly relied upon by Defendant in its initial motion to disqualify Plaintiff's counsel. In *NAACP v. State of Florida, Dept. of Corrections*, 122 F. Supp. 2d 1335, 1342-43 (M.D. Fla. 2000), the court stated that "'managerial' personnel and other 'control group' type personnel . . . are the types of employees whose statements could generally be construed as an admission of a party-opponent under FRE 801(d)(2)(d)." The court explained that "[t]hese are the types of individuals who are typically considered 'parties' because of their involvement in the suit or because of their involvement in the management and policy making of the defendant." *Id.* at 1342. In addition, the court stated that "'rank and file employees . . . ordinarily . . . should not be in the position to make statements that could be considered admissions of the [employer] . . ." *Id.* at 1343. Another analysis used by the court for determining whether a statement is admissible as an admission "is whether the

5

employee was *authorized to act for the employer regarding the matter about which he/she spoke.*" *Id.* (emphasis added).

In this case, Judge Snyder's conclusion that Ms. Graham was not an employee whose statements to Plaintiff's counsel could serve as party admissions is supported by law because (1) Ms. Graham is not a managerial employee; and (2) her statements to Plaintiff's counsel did not concern her employment with Defendant at the time the statements were made, nor was she "authorized to act for [Defendant] regarding the matter about which he/she spoke." *Id.* at 1343. As to the arguments on Ms. Graham's non-managerial employee status, Plaintiff respectfully directs the Court's attention to the arguments made in Plaintiff's Memorandum in Opposition to Defendant's Motion to Disqualify Plaintiff's Counsel, [DE 71] at 10-13, and supporting exhibits.

On the second point, Ms. Graham's statements to Plaintiff's counsel can not be used as party admissions against Defendant because Ms. Graham was not "authorized to act for [Defendant] regarding the matter[s] about which she spoke" to Plaintiff's counsel. *NAACP*, 122 F. Supp. 2d at 1342. In Ms. Graham's February 5, 2008 telephone interview with Plaintiff's counsel, Ms. Graham discussed several events during the 2004-2005 period. *See* DE 71, Ex. C. These matters chiefly concerned Ms. Graham's recollection of various conversations involving Plaintiff (*i.e.*, complaints to management that Plaintiff made during the 2004-2005 period, Plaintiff's requests for access to various databases) while Ms. Graham was employed in a completely different role and department than her present employment. Further, since the 2004-2005 period, Ms. Graham has left the Defendant, worked in a different capacity as a contract employee for the Defendant, and returned to the Defendant in a wholly different role as a "writer", not a compliance review officer. Defendant has produced no evidence in support of its position that (a) Ms. Graham's statements to Plaintiff's counsel about events that took place in

6

2004 and 2005 concern her current employment with Defendant, or (b) that Ms. Graham was authorized to act for [Defendant] regarding the matter[s] about which she spoke" to Plaintiff's counsel. *NAACP*, 122 F. Supp. 2d at 1342.

Finally, even if the Court found that Ms. Graham's statements to Plaintiff's counsel could be construed as admissions against Defendant under FRE 801(d)(2), the Court could simply exclude any such statements from being entered into evidence under FRE 801(d)(2)(d) (as it did in *NAACP*).

## II. JUDGE SYNDER CORRECTLY HELD THAT EVEN IF THE APPEARNCE OF IMPROPRIETY STANDARD WAS APPLICABLE, DEFENDANT HAD NOT MET ITS BURDEN

In its objections, Defendant complains that Judge Snyder incorrectly concluded that the "appearance of impropriety" standard was no longer an applicable standard for disqualifying counsel. Def. Obj. at 14. In fact, Judge Snyder held that it was not clear whether the analysis was still to be applied by Florida federal courts. DE 74, Order, at 6. Given the uncertainty of the application of the standard, Judge Snyder conducted an analysis of the facts in this case under the "appearance of impropriety" standard and concluded that "Defendant failed to show either a reasonable possibility Ms. Doolittle violated Bar Rule 4-4.2 and improperly conversed with Ms. Graham, or that 'the likelihood of public suspicion or obloquy' outweighs 'the social interests that will be served by the attorney's continued participation in the case.'" *Id.* at 8.

In response, Defendant complains chiefly that because Plaintiff's counsel "did not provide the material warnings or disclaimers prior to the interview," there is a reasonable probability that some impropriety did in fact occur. Def. Obj. at 16. As set forth in Plaintiff's

counsel's affidavit, *see* DE 71, Ex. C, Plaintiff's counsel did take measures to determine whether the conversation with Ms. Graham was appropriate.

At the onset of the call, Plaintiff's counsel immediately identified herself as the attorney for Plaintiff and identified the name of the lawsuit. Next, Plaintiff's counsel asked if Ms. Graham would be willing to answer questions about certain issues concerning Ms. McFadden's employment with the Defendant (Ms. Graham was a peer of Ms. McFadden's at the Bank as they were hired into the same position at approximately the same time). Plaintiff's counsel also specifically identified the Defendant's counsel (by firm name and individual name) and asked if she had spoken with any of the attorneys from that firm. In response, Ms. Graham said that she had not and that the only person she had spoken with was a gentleman who represented Plaintiff and asked her questions about Plaintiff's discrimination case. Plaintiff's counsel also asked about Ms. Graham's employment with Defendant and learned that she was not in a managerial role with the Defendant, nor was she doing compliance review work as she was during the time in question (2004-2005). *See* DE 71, Ex. C.

Given these measures and the fact that the communication with Ms. Graham was proper under Rule 4-4.2, Judge Snyder's ruling under this standard (even if still applicable among Florida federal courts) is supported by law.

### III.   PLAINTIFF REQUESTS AN AWARD OF COSTS AND EXPENSES ASSOCIATED WITH ITS DEFENSE OF THIS MOTION

Under Rule 37(a)(4) of the Federal Rules of Civil Procedure, the court "may require the moving party or the attorney filing the motion or both of them to pay to the party or deponent

who opposed the motion the reasonable expenses incurred in opposing the motion, including attorney's fees, unless the court finds that the making of the motion was substantially justified or that other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37 (a)(4). Further, a court may award a party its costs and fees incurred in defending a motion for sanctions that is unsupported. *See Bernal v. All American Realty Investment, Inc.,* 479 F. Supp. 2d 1291, 1300 (S.D. Fla. 2007).

Defendant's objections, as well as its underlying motion for disqualification and sanctions against Plaintiff, is not supported. Defendant proffered no evidence that Ms. Graham was or is presently a managerial employee, or has the ability to bind the Defendant, or make party-admissions by Defendant. This motion was not about a genuine concern that an ethical violation occurred as is often the case with motions to disqualify counsel. Rather, it was designed to harass Plaintiff and her counsel. This bad faith is illustrated by Defendant's counsel's repeated mean-spirited refusal to entertain Plaintiff's counsel's requests to resolve this issue without Court intervention. Despite the belief that her conduct was completely appropriate, Plaintiff's counsel agreed to provide some of the relief sought by Defendant (absent disqualification of course). That olive branch was quickly and summarily cast aside by Defendant's counsel. This conduct also demonstrates that Defendant's counsel motion is solely intended to harass Plaintiff.

Through this litigation, Defendant and its counsel's collective intent has been to bombard Plaintiff with baseless motions and to increase Plaintiff's burden in prosecuting this suit. This is the *fifth* instance in which the Defendant has placed an issue before this Court that is not supported by law or fact and for which Plaintiff has had to spend hours to defend. While the Court has ruled in Plaintiff's favor on these motions, it has not awarded Plaintiff the costs or fees she has incurred in having to defend against these tactical measures.

First, without any notice to Plaintiff's counsel, Defendant served a subpoena on Plaintiff's former attorney in this matter seeking his entire client file (including all attorney-client communications). That subpoena was quashed (after Plaintiff filed an emergency motion). Second, Defendant filed a motion to compel Plaintiff to sign an IRS release for tax returns that already had been provided to Defendant (less Plaintiff's spouse's social security number and individual income). Defendant refused to withdraw the motion even though Plaintiff's counsel shared authority that was on all fours with Plaintiff's position (and which was relied upon by the Court in denying Defendant's motion). Next, Defendant sought to sanction Plaintiff for what Defendant's counsel "felt" was an improper basis upon which to move to quash a subpoena to Plaintiff's recent employer. In that motion, Defendant accused Plaintiff and her counsel of making misrepresentations to the Court and counsel. Plaintiff provided ample authority in support of her position for filing that motion. The Court denied this motion as well. Apparently undeterred from its losing record, Defendant's counsel brought the motion to disqualify Plaintiff's counsel in which it *for a second time* made very serious accusations of unethical conduct against Plaintiff's counsel. At not one point prior to filing that motion did Defendant's counsel telephone Plaintiff's counsel to learn her position on this issue before making these untrue and unfounded allegations a part of the public record. This unprofessionalism should not be countenanced in this Division and by this Court.

Plaintiff respectfully requests the Court for an award of its fees and costs in having to defend this motion as it has caused Plaintiff's counsel to take time away from working on the real issues in this case, has "increased the cost of litigation for the parties, [and has placed] an increased burden on the Court." *Maulautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1541-42 (11th Cir. 1993).

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests the Court to deny Defendant's objections to Judge Snyder's Order, and to order Defendant to pay the fees and costs associated with Plaintiff having to defend this motion.

Respectfully submitted,

THE LAW OFFICE OF KIRSTEN DOOLITTLE, P.A.

By: /s Kirsten Doolittle
Kirsten Doolittle
Florida Bar No. 0942391
The Law Office of Kirsten Doolittle, P.A.
1919 Atlantic Blvd.
Jacksonville, Florida 32207
Telephone: (904) 396-3772
Facsimile: (904) 396-3267
Email: kd@kdlawoffice.com
*Attorney for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing has been filed using the Court's ECF System, which in turn provided a notice copy of same to Defendant's counsel, Annette Torres, of Stearns, Weaver, Miller, Weissler, Alhadeff & Sitterson, P.A., Museum Tower, 150 West Flagler Street, Suite 2200, Miami, Florida 33130, this 21st day of April 2008.

s/Kirsten Doolittle
Kirsten Doolittle